OGONNA M. BROWN, ESQ.
Nevada Bar No. 7589
E-mail: obrown@nevadafirm.com
MARY LANGSNER, ESQ.
Nevada Bar No. 13707
E-mail: mlangsner@nevadafirm.com
HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:     702/791-0308
*Attorneys for Plaintiff Wynn Holdings, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WYNN HOLDINGS, LLC, a Montana limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>ROLLS-ROYCE MOTOR CARS NA, LLC, a Delaware limited liability company; TOWBIN MOTOR CARS, LLC, a Nevada limited liability, company;<br><br>        Defendants. | Case No.: 2:17-cv-00127-RFB-NJK<br><br>**Omnibus Opposition to Motions for Summary Judgment** |

Plaintiff Wynn Holdings, LLC ("Plaintiff"), by and through its undersigned counsel Ogonna M. Brown, Esq. and Mary Langsner, Esq. of the law firm Holley Driggs Walch Fine Wray Puzey & Thompson, hereby files this Omnibus Opposition to Motions for Summary Judgment ("Opposition"). The Opposition opposes the Motion for Summary Judgment Under FED. R. CIV. P. 56 filed by Defendant Rolls-Royce Motor Cars NA, LLC (ECF No. 57) ("Rolls Royce

Motion")[1] and the Motion for Summary Judgment Under FED. R. CIV. P. 56 filed by Defendant Towbin Motor Cars, LLC (ECF No. 63) ("Towbin Motion"), as genuine issues of material fact remain which preclude the relief sought by defendants Rolls-Royce Motor Cars NA, LLC ("Rolls Royce") and Towbin Motor Cars, LLC ("Towbin") (collectively, "Defendants").

This Opposition is supported by the Declaration of Paul Edalat in Support of Plaintiff's Omnibus Opposition to Motions for Summary Judgment ("Edalat Declaration"), concurrently filed herewith; the pleadings and papers on file herein[2]; and any oral argument this Court may entertain should it set either of the Motions for hearing.

Dated this 13th day of April 2018.

> **HOLLEY DRIGGS WALCH**
> **FINE WRAY PUZEY & THOMPSON**
>
>  /s/ Mary Langsner
> OGONNA M. BROWN, ESQ.
> Nevada Bar No. 7589
> MARY LANGSNER, ESQ.
> Nevada Bar No. 13707
> 400 South Fourth Street, Third Floor
> Las Vegas, Nevada 89101
> *Attorneys for Wynn Holdings, LLC*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Motions brought by Defendants do not demonstrate that either Rolls Royce or Towbin are entitled to summary judgment on all causes of action advanced in Plaintiff's Amended Complaint filed with this Court March 2, 2017 [ECF No. 10] (the "Complaint").

### II.      STATEMENT OF RELEVANT FACTS

1.      Mr. Edalat is a member of Wynn Holdings, LLC ("Plaintiff").

---

[1] All references to "ECF No." are to the numbers assigned to the documents filed in the District of Nevada case identified in the caption above ("Case"), as they appear on the docket maintained by the District Court Executive/Clerk of Court of the United States District Court for the District of Nevada.

[2] Judicial notice of which Plaintiff respectfully requests pursuant to FED. R. EVID. 201(b) and (c) and 1101(a) and (b).

2. Plaintiff is a Montana Limited Liability Company registered with the Nevada Secretary of State. A true and correct copy of Plaintiff's entity details page with the Nevada Secretary of State is attached to the Edalat Declaration as **Exhibit "1"**.

3. On June 6, 2015 (the "Purchase Date"), Mehdi (Max) Khorasani ("Mr. Khorasani"), acting as Plaintiff's agent, purchased a 2012 Rolls-Royce Ghost four-door sedan, Vehicle Identification Number SCA664L55CUX65734 (the "Rolls-Royce Vehicle") from Towbin Motor Cars at 5550 W. Sahara Avenue in Las Vegas, Nevada, 89148 ("Towbin"), in person at Towbin (the "Purchase Transaction"), as evidenced in the Purchase Contract, a true and correct copy of page 1 of which is attached as **Exhibit "2"** hereto. *See also* ECF No. 58 pp. 5-6 of 6 and ECF No. 64 pp. 5-6 of 6.

4. Mr. Edalat is a member of Plaintiff entity with Mr. Khorasani.

5. Mr. Khorasani was Plaintiff's agent at the Purchase Transaction.

6. Thereafter, Mr. Khorasani transferred title of the Rolls-Royce Vehicle to Plaintiff. *See* Certificate of Title for the Rolls-Royce Vehicle, a true and correct copy of which is attached to the Edalat Declaration **Exhibit "3"**; see also Rolls-Royce Vehicle registration at the time this lawsuit was commenced, reflecting Plaintiff as the registered owner of the Vehicle as of the commencement of this lawsuit, a true and correct copy of which is attached to the Edalat Declaration's Ex. 3.

7. Towbin sold Mr. Khorasani, a certified pre-owned Rolls-Royce motor vehicle; Mr. Khorasani purchased the vehicle and in the capacity of Plaintiff's agent.

8. Mr. Edalat was present in person at the Purchase Transaction and personally witnessed representations made by Towbin that the Rolls-Royce Vehicle being sold was a Certified Pre-Owned Rolls-Royce vehicle.

9. Page 1 of the Purchase Contract identifies that Towbin sold the Rolls-Royce Vehicle with the following language selected: "Used Vehicle Limited Warranty Applies. We are providing the attached Used Vehicle Limited Warranty in connection with this transaction. Any

implied warranties apply for the duration of the Limited Warranty." *See* Ex. 2 (Purchase Contract) at exhibit page 4.

10.   Mr. Edalat is not in possession of the "attached Used Vehicle Limited Warranty" referenced in the Purchase Contract.

11.   The "attached Used Vehicle Limited Warranty" referenced by the Purchase Contract does not appear to be attached to the Motions or their supporting declarations on file with this Court.

12.   Prior to initiating litigation, all records regarding the Rolls-Royce Vehicle including regarding its ownership history and any relevant inspections or other documentation were requested from Towbin, but this information was denied or not provided in each instance.

13.   Mr. Edalat, as a member of Plaintiff, would have never authorized the purchase of the Rolls-Royce Vehicle if it were not a certified pre-owned Rolls-Royce motor vehicle.

14.   Mr. Edalat, as a member of Plaintiff, would have never authorized the purchase of the Rolls-Royce Vehicle if the vehicle's extensive prior repairs were disclosed at or in advance of the Purchase Date to Plaintiff's agent, Mr. Khorasani.

15.   Plaintiff was not informed of the Rolls-Royce Vehicle's prior accident or lengthy prior history of repairs prior to the closing of the Purchase Transaction.

16.   Mr. Edalat, as a member of Plaintiff, would never have authorized the purchase of the Rolls-Royce Vehicle if Plaintiff had been informed of the Rolls-Royce Vehicle's prior accident history.

17.   Prior to the Purchase Date, Mr. Edalat, as a member of Plaintiff, was informed that Towbin was an authorized Rolls-Royce dealer that sells Certified Pre-Owned Rolls-Royce vehicles.

18.   On the Purchase Date, Plaintiff understood Towbin to be an authorized Rolls-Royce dealer that sells Certified Pre-Owned Rolls-Royce vehicles.

19.   Mr. Edalat, as a member of Plaintiff, would never have authorized the purchase of the Rolls-Royce Vehicle from Towbin if Towbin were not a certified Rolls-Royce dealer.

20.     Plaintiff has since requested from Towbin a copy of the Rolls-Royce Vehicle's one hundred ninety-one-point inspection report relating to pre-sale inspection of the Rolls-Royce Vehicle, but this information was not provided by Towbin.

21.     Towbin remains an authorized Rolls-Royce dealer that sells Certified Pre-Owned Rolls-Royce vehicles.  *See* Website Printouts and Rolls-Royce Brochures procured after the Motions were filed true and correct copies of which are attached to the Edalat Declaration as **Exhibit "4"**.

22.     Plaintiff has possessed and used the Rolls-Royce Vehicle since the Purchase Date.

23.     In the calendar year following the Purchase Date, the Rolls-Royce Vehicle was taken to authorized Rolls-Royce dealer service centers for repairs on at least eight occasions (collectively, the "First Year Repairs").  *See* Repair Invoices for the First Year Repairs, true and correct copies of which are attached to the Edalat Declaration as **Exhibits "5", "6", "7", "8", "9", "10", "11", and "12"**.

24.     The First Year Repairs totaled over one hundred days the Rolls-Royce Vehicle was out of service for repair.  *See id.*

25.     The First Year Repairs included one occasion lasting thirty-two days in a row out of service for repair from January 8, 2016, through February 9, 2016.  *See* Ex. 10 (Jan.-Feb. 2016 Repairs).

26.     The First Year Repairs include three consecutive occasions lasting a total of seventy-six (76) days between January 8, 2016, and March 31, 2016—out of a total number of eighty-three (83) calendar days.  *See* Exs. 10 (Jan.-Feb. 2016 Repairs), 11 (Feb.-Mar. 2016 Repairs), and 12 (Mar. 2016 Repairs).

27.     Among the First Year Repairs were five independent occasions where vehicle shaking during acceleration and/or engine shaking during acceleration were a condition identified for the Rolls-Royce Vehicle being taken in for repair.  *See* Exs. 5 (Jul. 2015 Repairs), 7 (Aug.-Sept. 2015 Repairs), 8 (Oct.-Nov. 2015 Repairs), 9 (Dec. 2015-Jan.2016), and 10 (Jan.-Feb. 2016 Repairs).

28.     On or about December 30, 2015, Mr. Edalat, as a member of Plaintiff, initiated contact with Laura Vaughan ("Ms. Vaughan") at Defendant Rolls-Royce regarding the multiple sequential, iterative, and recurrent repair issues with the Rolls-Royce Vehicle.  *See* Vaughan Dec. 2015 Email Correspondence, true and correct copy of which is attached to the Edalat Declaration as **Exhibit "13"**.

29.     Mr. Edalat's email correspondence with Ms. Vaughan continued throughout the remaining six months of the time in which the First Year Repairs occurred.  *See* Vaughan Jan.-Jun. 2016 Email Correspondence, true and correct copies of which are attached to the Edalat Declaration as **Exhibits "14", "15", "16", and "17"**.

30.     Specifically, on January 7 and 8, 2016, Mr. Edalat informed Ms. Vaughan of the multiple prior occasions since the Purchase Date where the Rolls-Royce Vehicle's shaking during acceleration had been the chief complaint necessitating repairs; in this same correspondence Mr. Edalat noted the complaint necessitating these repairs "still exists"—a representation made just six (6) months after the Purchase Date and after the First Year Repairs occasions identified at Exhibits 5 (Jul. 2015 Repairs), 7 (Aug.-Sept. 2015 Repairs), 8 (Oct.-Nov. 2015 Repairs), and 9 (Dec. 2015-Jan.2016) to Mr. Edalat's Declaration.  *See* Exs. 15 (Jan. 7, 2016, Vaughan Email Correspondence) and 16 (Jan. 8, 2016, Vaughan Email Correspondence).

31.     The extensive time in repair for the First Year Repairs was not attributed to reasons not beyond the control of either of the Defendants, Rolls-Royce or Towbin.  *See* Exs. 5 (Jul. 2015 Repairs), 6 (Jul.-Aug. 2016 Repairs), 7 (Aug.-Sept. 2015 Repairs), 8 (Oct.-Nov. 2015 Repairs), 9 (Dec. 2015-Jan.2016), 10 (Jan.-Feb. 2016 Repairs), 11 (Feb.-Mar. 2016 Repairs), and 12 (Mar. 2016 Repairs).

32.     Within the first year after the Purchase Date Mr. Edalat was informed by Jenevieve Saldivar ("Ms. Saldivar") of Rolls-Royce Orange County, 9853 Research Drive, Irvine, California, 92618, that the Rolls-Royce Vehicle had been in an accident prior to the Purchase Date (the "Prior Accident Information").

33.     Ms. Saldivar was the first person to inform Mr. Edalat or Plaintiff of the Prior Accident Information.

34.     After learning of the Prior Accident Information and during one of the extended First Year Repair occasions, on February 22, 2016, Mr. Khorasani requested by email the documentation from Towbin regarding the Prior Accident Information and was denied.  *See* Khorasani-Towbin Email Correspondence, true and correct copies of which are attached to the Edalat Declaration as **Exhibit "18"**.

35.     After the First Year Repairs, the Rolls-Royce Vehicle was taken to authorized Rolls-Royce dealer service centers for repairs on at least four more occasions before the second anniversary of the Purchase Date (collectively, the "Subsequent Year Repairs").  *See* Subsequent Year Repairs Invoices, true and correct copies of which are attached to the Edalat Declaration as **Exhibits "19"** (Jun. 2016 Repairs I)**, "20"** (Jun. 2016 Repairs II)**, "21"** (Jul.-Aug. 2016 Repairs)**, and "22"** (Aug. 2016 Repairs).

36.     The Subsequent Year Repairs totaled approximately forty-two (42) additional days the Rolls-Royce Vehicle was out of service for repair.  *See id.*

37.     Mr. Edalat's email correspondence with and involving Ms. Vaughan continued throughout the Subsequent Year Repairs and into at least July of 2016.  *See* Vaughan Jun.-Jul. 2016 Email Correspondence, true and correct copy of which is attached to the Edalat Declaration as **Exhibit "23"**.

38.     The extensive time in repair for the Subsequent Year Repairs was not attributed to reasons not beyond the control of either of the Defendants, Rolls-Royce or Towbin.  *See* Exs. 19 (Jun. 2016 Repairs I), 20 (Jun. 2016 Repairs II), 21 (Jul.-Aug. 2016 Repairs), and 22 (Aug. 2016 Repairs).

39.     The Subsequent Year Repairs included one occasion lasting thirty-four days in a row out of service for repair from July 9, 2016, through August 12, 2016.  *See* Ex. 21 (Jul.-Aug. 2016 Repairs).

40.     On this July 9, 2016, through August 12, 2016, occasion, the Rolls-Royce Vehicle was in the shop at Towbin (the "Last Warranty Attempt"). *See* Ex. 21 (Jul.-Aug. 2016 Repairs).

41.     During the Last Warranty Attempt Mr. Edalat also corresponded by email with Ms. Saldivar regarding the Rolls-Royce Vehicle.  *See* Saldivar and Vaughan Email Correspondence Jul. 2016, true and correct copies of which are attached to the Edalat Declaration as **Exhibits "24", "25, and "26"**.

42.     A true and correct copy of documentation received from Towbin regarding repairs performed during the Last Warranty Attempt and identifying service advisor Gage Garrison ("Advisor Garrison") is attached to the Edalat Declaration at Ex. 21 (Jul.-Aug. 2016 Repairs).

43.     During and through several days of the Last Warranty Attempt Mr. Edalat exchanged a number of text messages with Advisor Garrison.  *See* Garrison Text Exchange, a true and correct copy of which is attached to the Edalat Declaration as **Exhibit "27"**.

44.     As identified in the foregoing, Towbin performed significant engine- and transmission-related repair during the Last Warranty Attempt.  *See* Ex. 27 (Garrison Text Exchange).

45.     The information regarding the Rolls-Royce Vehicle conveyed to Mr. Edalat via the Garrison Text Exchange does not appear reflected in the documentation received from Towbin regarding repairs performed during the Last Warranty Attempt.  *Compare* Ex. 21 (Jul.-Aug. 2016 Repairs), *with* Ex. 27 (Garrison Text Exchange).

46.     Attached to the Edalat Declaration as **Exhibit "28"** is a true and correct copy of an expert report Mr. Edalat obtained during the course of this lawsuit (the "Report"), which reviewed the Rolls-Royce Vehicle's repair history before and after the Purchase Date, as well as the inefficacy of the extensive repair efforts, including the Last Warranty Attempt.

47.     Review of the First Year Repairs indicates prior body work had been performed on the Rolls-Royce Vehicle. *See* Ex. 6 (Jul.-Aug. 2016 Repairs) at Invoice Page 1 and Warranty Page 1 and Accounting Pages 1-2 ("there are clips missing and trim has been removed before, trim is also slightly warped."), ("vehicle looks like it has had a windshield installed previously." [appears

1   twice]).  *See* Ex. 7 (Aug.-Sept. 2015 Repairs) at Invoice Duplicate Page 1 ("Found trim had been

2   removed and was not re-installed properly."), ("Also found left rear door seal is coming loose at

3   bottom and clip on bottom of same door loose."), ("Scrape marks also found on bottom of left rear

4   door.  Client to contact selling dealer regarding this concern.").

5         48.    The Rolls-Royce Vehicle prior history indicates the vehicle spent several occasions

6   out of service for repair antecedent to the Purchase Date.

7         49.    Despite even written request to Towbin for records related to the Rolls-Royce

8   Vehicle that precede the Purchase Date, which request was lodged almost ten months before this

9   lawsuit was commenced—*see* Ex. 18 (Khorasani-Towbin Email Correspondence)—Plaintiff was

10  not provided copies of such records.

11        50.    The Rolls-Royce Vehicle was under a Rolls-Royce warranty as of the Purchase

12  Date which was in place continuously through a date of October 30, 2016 (the "Warranty

13  Expiration Date").  *See* Ex. 26 (Saldivar and Vaughan Email Correspondence Jul. 2016); *see also*

14  Ex. 2 (Purchase Contract) at exhibit page 4 ("Used Vehicle Limited Warranty Applies.  We are

15  providing the attached Used Vehicle Limited Warranty in connection with this transaction.  Any

16  implied warranties apply for the duration of the Limited Warranty.").

17        51.    Plaintiff was left without use of the vehicle during the over one hundred eighty days

18  the Rolls-Royce Vehicle was out of service for repair between the Purchase Date and the Warranty

19  Expiration Date.  *See* Exs. 5 (Jul. 2015 Repairs), 6 (Jul.-Aug. 2016 Repairs), 7 (Aug.-Sept. 2015

20  Repairs), 8 (Oct.-Nov. 2015 Repairs), 9 (Dec. 2015-Jan.2016), 10 (Jan.-Feb. 2016 Repairs), 11

21  (Feb.-Mar. 2016 Repairs), 12 (Mar. 2016 Repairs), 19 (Jun. 2016 Repairs I), 20 (Jun. 2016 Repairs

22  II), 21 (Jul.-Aug. 2016 Repairs), and 22 (Aug. 2016 Repairs)

23        52.    On April 4, 2017, Plaintiff lost the opportunity to sell the Rolls-Royce Vehicle to a

24  third party.

25        53.    In correspondence with the prospective buyer Mr. Edalat, as a member of Plaintiff,

26  was informed that the lack of service records from Towbin, the "lack of attention" from Rolls-

27  Royce to fix the problems with the Rolls-Royce Vehicle, and the ongoing problems with the Rolls-

Royce Vehicle itself prevented the buyer from moving forward to close the sale and purchase the Rolls-Royce Vehicle from Plaintiff.  *See* Buyer Email Correspondence, true and correct copy of which is attached to the Edalat Declaration as **Exhibit "29"**.

54.     Thereafter, in June 2017, the Rolls-Royce Vehicle suffered a significant breakdown, whereupon Mr. Edalat was informed by Rolls-Royce O'Gara Beverly Hills that "the engine block has cracked and is broken where the starter motor bolts to the engine bolt."  *See* Breakdown Email Correspondence, true and correct copies of which are attached to the Edalat Declaration as **Exhibit "30"**.

55.     Mr. Edalat was informed the only way to correct this engine-related issue is that the Rolls-Royce Vehicle's engine be replaced.  *See id.*

56.     Thereafter, on June 28, 2017, Defendant Rolls-Royce would not offer repair coverage on the Rolls-Royce Vehicle and required payment of all necessary repairs.  *See* No Coverage Email Correspondence, true and correct copy of which is attached to the Edalat Declaration as **Exhibit "31"**.

57.     Rolls-Royce Orange County also recommended full engine replacement to correct the engine-related issues.  *See id.*

58.     Except for the two requests Mr. Edalat lodged with Rolls-Royce on Plaintiff's behalf, Plaintiff has not previously or since requested repurchase or replacement of a motor vehicle.

59.     The Rolls-Royce Vehicle is the only motor vehicle for which Plaintiff has requested repurchase or replacement.

60.     Since Plaintiff has owned the vehicle, the vehicle has not been involved in any accidents.

61.     The defects with the Rolls-Royce Vehicle substantially impair Mr. Edalat's use of, and Plaintiff's use of, the Rolls-Royce Vehicle.

62.     The defects with the Rolls-Royce Vehicle substantially impair the value of the Rolls-Royce Vehicle.

63.    The damages caused to Plaintiff as a result of Defendants' breaches left Plaintiff with an undrivable Rolls-Royce Vehicle in a disassembled state with Defendant Rolls-Royce demanding payment in order to perform the repairs identified.  *See* Ex. 31 (No Coverage Email Correspondence).

64.    Mr. Edalat did not, and Plaintiff did not, carry out any unauthorized modifications or alterations, or cause to be carried out any unauthorized modifications or alterations, to the Rolls-Royce Vehicle.

65.    None of the issues identified with the Rolls-Royce Vehicle have been shown to be attributable to any abuse or neglect of the Rolls-Royce Vehicle by Plaintiff.

66.    Rolls-Royce has not ever offered to Plaintiff to replace the Rolls-Royce Vehicle or to reimburse the Rolls-Royce Vehicle's purchase price.

67.    The lone remedy offered by Rolls-Royce was presented by Rolls-Royce on February 1, 2016—less than one year after the Purchase Date and several months before the Warranty Expiration Date—via email and as "a goodwill offer of $5,000 for any inconvenience [I] may have experienced."  *See* Denial Email Correspondence I, true and correct copies of which are attached to the Edalat Declaration as **Exhibit "32"**.

68.    Mr. Edalat twice requested Rolls-Royce repurchase the Rolls-Royce Vehicle; these requests were denied in writing.  *See* Ex. 32 (Denial Email Correspondence I); *see* Denial Email Correspondence II, true and correct copies of which are attached to the Edalat Declaration as **Exhibit "33"**.

69.    Rolls-Royce never offered Plaintiff that Rolls-Royce would buy back the Rolls-Royce Vehicle.  *See id.*

## III.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment.

Under FED. R. CIV. P. 56(a), summary judgment is appropriate if "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  On issues where the

nonmoving party will bear the burden of proof at trial, the movant can prevail "by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007), citing *Celotex*, 477 U.S. at 323.  If the movant meets its burden, the non-moving party must set forth 'specific facts showing that there is a genuine issue for trial.' *Soremekun*, 509 F.3d at 984, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

At summary judgment, "an issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."  *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008), citing *Anderson*, 477 U.S. at 248.

In consideration of the summary judgment record before the Court, the Court must view the evidence in favor of the non-moving party.  *See Singh v. Clinton*, 618 F.3d 1085, 1088 (9th Cir. 2010); *see Co. of Tuolumne v. Sonora Community Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). The evidence of the moving party at summary judgment is judged by the same standard of proof as applicable at trial.  *See Anderson*, 477 U.S. at 254-55; *see also So. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).  Inferences are viewed in favor of the party opposing summary judgment, unless substantive law does not allow such inferences regarding the claims. *See Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In rebutting a properly supported motion for summary judgment, the non-moving party must "point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff['s] favor, could convince a reasonable jury to find for the plaintiff[]."  *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000); *see also Galen v. Co. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (non-moving party may defeat summary judgment if it "make[s] a showing sufficient to establish a genuine dispute of material fact" requiring a trial to resolve).  The non-moving party "must establish the existence of a genuine factual dispute on the basis of admissible evidence[, and] bare allegations without evidentiary

support are insufficient to survive summary judgment." *Estate of Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1034, n.14 (9th Cir. 2008).

In the present case, Defendants have not established there is an absence of evidence to support the elements of each cause of action in Plaintiff's Complaint.  However, even if the Court were to find otherwise that Defendants have carried their initial burden under FED. R. CIV. P. 56, Plaintiff can identify specific facts showing that there is a genuine issue for trial, on the causes of action advanced in the Complaint.  This Opposition is supported by admissible evidence in the form of the Edalat Declaration and exhibits attached thereto, which demonstrate there are genuine issues of fact remaining and triable issues regarding each of the six causes of action advanced in Plaintiff's Complaint.  Plaintiff respectfully urges this Court to deny the Motions so that the matter can proceed to trial on the merits on all causes of action.

**B.**    **Analysis.**

1.    **Defendants have not demonstrated that no genuine issue of material fact remains under all causes of action.**

a.    **Cause of Action 1: Violation of Nevada Lemon Law.**

Under NRS 597.300, Plaintiff is a "Buyer" within the meaning of the statute governing violation of Nevada's motor vehicle "Lemon Law", NRS 597.600 through 597.688.  Under NRS 597.688, "A person who incurs an injury or damages as the proximate result of a violation of the provisions of NRS 597.682, 597.684 or 597.686 may commence an action in a court of competent jurisdiction for the recovery of his or her actual damages, costs and reasonable attorney's fees and for any punitive damages that the facts may warrant."  Under NRS 597.630(1) both Rolls-Royce and Towbin are liable to Plaintiff based on the following statutory language:

> If, after a reasonable number of attempts, **the manufacturer, or its agent or authorized dealer** is unable to conform the motor vehicle to any applicable express warranty by repair or correction and the defect or condition causing the nonconformity **substantially impairs the use and value** of the motor vehicle to the buyer and **is not the result of abuse, neglect or unauthorized modifications or alterations** of the motor vehicle, the manufacturer shall[ perform either of the statutory remedies set forth in NRS 597.630(a) and (b)].

(Emphasis added).

In reviewing Nevada's "Lemon Law" the Ninth Circuit has stated:

> The Nevada lemon law states that if an automobile manufacturer, its agent or its authorized dealer is not able to conform a vehicle to its warranty after a reasonable number of attempts to repair the vehicle have been made, and the nonconformity substantially impairs the use and value of the vehicle to the buyer, it must replace the vehicle or give the purchaser a refund of the purchase price, including taxes and fees, less a deduction for the reasonable use of the vehicle. [NRS] 597.630(1). If within the first year, or within the time the warranty is in effect, whichever is less, **the same condition is subject to repair four or more times or the vehicle is out of service for repair more than 30 calendar days for reasons not beyond the control of the manufacturer, its agent or its authorized dealer**, it is presumed that a reasonable number of attempts to repair the vehicle have been made. [NRS] 597.630(2). When the vehicle is out of service more than 30 calendar days, the nonconformity does not have to be ongoing. *See id.*

*Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 916 (9th Cir. 2005) (emphasis added).

In this instance, Defendants have not demonstrated that there is no genuine issue of material fact that there were not a reasonable number of attempts to conform the motor vehicle to express warranty by repair or correction. Nor have Defendants demonstrated that there is no genuine issue of material fact that the Rolls-Royce Vehicle conformed to its express motor vehicle warranty. *See, e.g.*, Exs. 5, 7, 8, 9, 10 to the Edalat Declaration. Moreover the attached service records and expert report demonstrate a genuine issue of material fact regarding the number of repair attempts undertaken, the inability of the Rolls-Royce Vehicle to be conformed to its express motor vehicle warranty, and the liability of Rolls-Royce as the manufacturer and Towbin as the agent or authorized dealer for these failures. *See id.*

Specifically, five times within the first six months—more than that required to merit entitlement to refund or replacement under NRS 597.630—the Rolls-Royce Vehicle was subject to repair for shaking during acceleration. *See* Exs. 5, 7, 8, 9, and 10 to the Edalat Declaration. Moreover, in the first year of Plaintiff's ownership of the Rolls-Royce Vehicle, the Rolls-Royce Vehicle was out for service for repair over one hundred days days—more than the thirty (30) calendar days required under Nevada statute to trigger replacement or refund under Nevada's lemon law. *See* Exs. 5, 7, 8, 9, 10, 11, and 12 to the Edalat Declaration. As identified in the

- 14-

documentary evidence attached to the Edalat Declaration, this extensive time in repair was not attributed to "reasons not beyond the control" of either of the Defendants, Rolls-Royce or Towbin. *Id.*

In *Trout v. BMW of North America*, 2007 WL 602230, *4 (D. Nev. Feb. 20, 2007), the District of Nevada found compliance with Nevada's "Lemon Law", and therefore no liability to the manufacturer could be sustained under this statute, where the undisputed evidence demonstrated that BMW of North America offered to buy back the vehicle from plaintiff, in compliance with Nevada statute.  However, the record in this instant dispute demonstrates not only that Rolls-Royce did not offer to buy back the motor vehicle but it only offered plaintiff's member $5,000.00 for "inconvenience".  *See* Exs. 32 and 33 to the Edalat Declaration.  As demonstrated by the purchase contract,[3] the price of the Rolls-Royce Vehicle was $168,270.55 (inclusive of all taxes and fees).  An offer of $5,000.00 is not an offer to buy back, nor is it an offer to replace the Rolls-Royce Vehicle, as Nevada law mandates.  Therefore a genuine issue of material fact remains as to Defendants' liability under this statute, and summary judgment should be denied as to this cause of action as to both Defendants.

### b.      Cause of Action 2: Breach of Contract.

"To prevail on a breach-of-contract claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach."  *SVI, Inc. v. Supreme Corp.*, 2016 WL 7190548, *6 (D. Nev. Dec. 12, 2016), citing *Richardson v. Jones*, 1 Nev. 405 (1865); *see also Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008), citing *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006).

As to the first element, Defendants do not dispute the existence of a valid purchase contract; in fact, Defendants each appear to attach a copy of the purchase contract to the (identical)

---

[3] *See* ECF No. 58 at pp. 5-6 of 6; *see* ECF No. 64 at pp. 5-6 of 6.

1  respective Maleske declarations filed in support of the Motions (ECF Nos. 58 and 64) (collectively,

2  the "Maleske Declaration").[4]

3        As to the second element, Defendants breached the purchase contract by a selling a faulty

4  vehicle with prior repair and accident history not disclosed to Plaintiff's agent, the buyer Mr.

5  Khorasani.  *See* Edalat Declaration.  The extensive vehicle repair history was not included in the

6  paperwork provided Mr. Khorasani at the sale of the Rolls-Royce vehicle.  *See* Edalat Declaration.

7  Although page 1 of the Purchase Contract indicates the Rolls-Royce Vehicle as a "Used" vehicle

8  being purchased by Mr. Khorasani,[5] nowhere in the Purchase Contract is it indicated that the Rolls-

9  Royce Vehicle was post-accident or possessing a lengthy repair history for recurrent and repeat

10 issues.  Defendant Towbin is identified on page 1 as the "Creditor" under the Purchase Contract,

11 and its "F & I Manager" signed on its behalf on page 1.  As identified on page 1 of the Purchase

12 Contract, Defendant Rolls-Royce is the manufacturer of the Rolls-Royce Vehicle, and, as

13 identified in Exhibit 4 to the Edalat Declaration, Defendant Towbin is an authorized Rolls-Royce

14 dealer.

15       As to the third element, damage as a result of the breach, Plaintiff has been left with an

16 undrivable Rolls-Royce Vehicle;[6] Plaintiff was left without use of the vehicle during the more than

17 one hundred days the Rolls-Royce Vehicle spent in the shop and from the Purchase Date to October

18 31, 2016; and Plaintiff's member Mr. Edalat has been unable to sell the Rolls-Royce Vehicle by

19 reason of the problematic repair history and Defendant Towbin's refusal to provide full records on

20 the Rolls-Royce Vehicle, when asked.[7]

21       Based upon the record before this Court, a genuine issue of material fact exists as to the

22 breach of both Defendants of the Purchase Contract.  Defendants have not proffered a record

23 demonstrating there are no genuine issues of material fact regarding Defendant Towbin, creditor,

24

25 [4] *See* ECF No. 58 at pp. 5-6 of 6; *see* ECF No. 64 at pp. 5-6 of 6.

26 [5] *See* Ex. 2 to the Khorasani Declaration.

[6] *See* Exs. 30 and 31 to the Edalat Declaration.

27 [7] *See* Ex. 18 to the Edalat Declaration.

and Defendant Rolls-Royce, manufacturer, under the Purchase Contract for the Rolls-Royce Vehicle.

### c.    Cause of Action 3: Breach of the Implied Covenant of Good Faith and Fair Dealing.

"An implied covenant of good faith and fair dealing is recognized in every contract under Nevada law." *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998), citing *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993).  "It is well established that all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other."  *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007) (collecting cases); *see also Frantz v. Johnson*, 999 P.2d 351, 358, n.4 (Nev. 2000), citing *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d at 1256, and *Overhead Door Co. of Reno, Inc. v. Overhead Door Corp.*, 734 P.2d 1233, 1235 (Nev. 1987).

"A breach of the covenant arises where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Sierra Dev. Co. v. Chartwell Advisory Grp., Ltd.*, 2016 WL 7238800, *5 (D. Nev. Dec. 14, 2016), quoting *Gunter v. United Fed. Credit Union*, 2016 WL 3457009, *2 (D. Nev. June 22, 2016) (quoting and citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991)); *see also Park v. Park*, 367 P.3d 808 (tbl.), 2010 WL 3276053, *2 (Nev. 2010) ("A party can incur liability for the breach of the implied covenant of good faith and fair dealing if that party 'deliberately countervenes the intention and spirit of the contract.'" (citing *Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994))).

Here, the prior vehicle history indicates not only was the Rolls-Royce Vehicle subject to an accident before the Purchase Date, but the Edalat declaration demonstrates that Plaintiff was not informed of the prior accident before being sold the Rolls-Royce Vehicle, via its agent Mr. Khorasani.  Same with the Rolls-Royce Vehicle's prior history of lengthy repairs.  *See* Edalat Declaration.  Towbin is an authorized Rolls-Royce dealer.  *Id.*  The record evidence demonstrates

that manufacturer Rolls-Royce[8] and creditor Towbin[9] deliberately contravened the intention and spirit of the Purchase Contract—while literally complying with its terms in conveying the Rolls-Royce Vehicle to Mr. Khorasani, Plaintiff's agent, upon purchase—because the subject vehicle was faulty, had a history of prior repairs, and had been in an accident, but was not identified as troublesome or faulty in the Purchase Contract.

Defendants have not demonstrated that there is no genuine issue of material fact that Rolls-Royce or Towbin did not contravene the spirit of the Purchase Contract by conveying a damaged motor vehicle to Plaintiff's agent without disclosure of the vehicle's true state.  Plaintiff therefore respectfully requests the Court deny the Motions and entitle Plaintiff to present proof on this claim at trial, against both Defendants.

### d.    Cause of Action 4: Breach of Express Warranty.

In *Nevada Contract Servs., Inc. v. Squirrel Companies, Inc.*, 119 Nev. 157, 68 P.3d 896 (Nev. 2003), the Nevada Supreme Court stated:

> We have recognized that purely economic losses can be recovered for breach of warranty.  In a breach of warranty cause of action, a plaintiff must prove that a warranty existed, the defendant breached the warranty, and the defendant's breach was the proximate cause of the loss sustained.

*Nev. Contract Servs., Inc.*, 119 Nev. at 161, 68 P.3d at 899 (footnote and citations omitted).

The parties do not dispute that the Rolls-Royce Vehicle was under Rolls-Royce warranty through October 30, 2016,[10] nor do the parties dispute the Purchase Date of June 6, 2015.[11]  Thus the parties do not dispute that a warranty existed—meaning Defendants cannot demonstrate a genuine issue of material fact exists as to the first element of this cause of action.

The parties dispute the second factor, that Defendants breached the warranty by failing to successfully repair the numerous issues identified with the Rolls-Royce Vehicle after the Purchase

---

[8] Identified on page 1 of the Purchase Contract.

[9] Identified on page 1 of the Purchase Contract and a signatory to the Purchase Contract.

[10] *See* Ex. 26 to Edalat Declaration.

[11] *See* ECF No. 58 at pp. 5-6 of 6; *see* ECF No. 64 at pp. 5-6 of 6.

Date.  Important as to the standards applicable under FED. R. CIV. P. 56, the parties, and their respective experts, hotly contest that the "repairs" performed by Defendant Towbin, on Defendant Rolls-Royce's vehicle, July through August of 2016, were the final, proverbial nail in the coffin for the Rolls-Royce Vehicle and, in conjunction with multiple prior unsuccessful repair efforts, led to the ultimate damage to the Rolls-Royce Vehicle, a cracked engine block rendering the vehicle undrivable.  *Compare* ECF No. 64-1 pp. 5-17 of 17, *with* Exs. 30 and 31 to the Edalat Declaration (vehicle requires engine replacement).  Because of the conflicting declarations and conflicting expert reports on this issue, Defendants cannot demonstrate there is no genuine issue of material fact as to whether Defendants Towbin and Rolls-Royce failed to successfully repair the Rolls-Royce Vehicle and therefore breached the express warranty governing it.

This same evidentiary dispute governs analysis of the third element under this cause of action, the proximate cause of the cracked engine block rendering the Rolls-Royce Vehicle undrivable.  Plaintiff and Defendants have presented conflicting evidence on this issue; therefore, Plaintiff respectfully posits that Defendants cannot demonstrate there is no genuine issue of material fact regarding the proximate cause of the cracked engine block, an event which has rendered the Rolls-Royce Vehicle totally undrivable and unusable as a motor vehicle.

Plaintiff therefore respectfully requests this Court deny Defendants' Motions and permit the parties to present evidence on this cause of action at trial, for the Court to weigh and determine the sufficiency of proof there presented.

        **e.**      **Cause of Action 5: Nevada Deceptive Trade Practices Act.**

Under NRS 598.0923 of the Nevada Deceptive Trade Practices Act, among others:

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she knowingly:
> ***
> 2.   Fails to disclose a material fact in connection with the sale or lease of goods or services.

Here, Defendant Towbin failed to disclose the material fact of the Rolls-Royce Vehicle's prior accident, in connection with Towbin's sale of the Rolls-Royce Vehicle to Plaintiff's agent, Mr. Khorasani.  *See* Edalat Declaration.  Defendant Towbin also failed to disclose the material fact

of the Rolls-Royce Vehicle's prior history, in connection with Towbin's sale of the Rolls-Royce Vehicle to Plaintiff's agent, Mr. Khorasani.   Defendant Towbin is an authorized dealer of Defendant Rolls-Royce.   *See* Edalat Declaration.   Defendant Rolls-Royce is the manufacturer of the Rolls-Royce Vehicle.[12]   Defendant Towbin is an authorized dealer that sells Certified Pre-Owned Rolls-Royce vehicles.   *See* Edalat Declaration.

Defendants cannot establish that there is no genuine issue of material fact as to whether Defendant Towbin failed to disclose a material fact in connection with sale of the Rolls-Royce Vehicle to Plaintiff's agent, as a certified pre-owned used Rolls-Royce, in its capacity as an authorized Rolls-Royce motor vehicle dealer.   Plaintiff has demonstrated that there is a genuine issue of material fact regarding the failure to disclose material facts to Plaintiff's agent regarding the prior vehicle history of the Rolls-Royce Vehicle, including that it had been in a prior accident before the Purchase Date.

Plaintiff therefore respectfully posits that there are genuine issues of material fact present regarding Defendants' liability, to Plaintiff, under this cause of action and that summary judgment should be denied, so that all facts relevant to this cause of action be brought forth for the evidence to be weighed and determined at trial in this matter.

### f.   Cause of Action 6: Magnuson-Moss Warranty Act.

As described in *Karlowitsch v. Evergreen Recreational Vehicles LLC*, 2016 WL 4744133, *2 (D. Nev. Sept. 12, 2016), the Magnuson-Moss Warranty Act ("MMWA"):

> creates a private right of action for a consumer when a warrantor has failed 'to comply with any obligation under . . . a written warranty, implied warranty, or service contract.'   [15 U.S.C.] § 2310(d)(1); *Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 917 (9th Cir. 2005).   However, while the MMWA creates a private cause of action, the underlying claim relies on state contract and warranty law.   *Id.* at 918 (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986)).   A plaintiff asserting a breach of warranty claim under Nevada must prove that a warranty existed, the defendant breached the warranty, and the defendant's breach was

---

[12] *See* Purchase Contract page 1, Ex. 2 to the Edalat Declaration; *see also* ECF No. 58 at p. 5 of 6 and ECF No. 64 at p. 5 of 6.

the proximate cause of the loss sustained. *Nevada Contract Servs., Inc. v. Squirrel Companies, Inc.*, 68 P.3d 896, 899 (Nev. 2003).

As set forth *supra*, there remain genuine issues of material fact regarding the Defendants' breach of warranty under Nevada state law (cause of action 4).  There are thus also genuine issues of material fact regarding the Defendants' liability to Plaintiff under the MMWA[13] for failure to comply with warranty obligations regarding the Rolls-Royce Vehicle's warranty—a warranty that Defendants admit was in existence through October 30, 2016.[14]  Plaintiff therefore respectfully requests that the Motions be denied and the parties be permitted to present evidence on the issue of Defendants' liabilities to Plaintiff under the MMWA at trial in this matter.

**2.      Because There Are Genuine Issues of Material Fact, Trial Should Be Had on the Merits in This Action Against Both Defendants.**

Defendants have not demonstrated there is no genuine issue of material fact on all causes of action such that judgment in each of their favors should be granted as a matter of law.  To the contrary, as set forth herein Plaintiff has established that there are genuine issues of material fact remaining on each cause of action for this Court to determine at trial.  Moreover, even were the Court to find that Defendants had carried their burden of demonstrating no genuine issue of material fact remains, Plaintiff has carried its burden of showing by specific facts that demonstrate a trier of fact could find in Plaintiff's favor on each cause of action.  From *Trout v. BMW Bank of N. Am.*, 2007 WL 602230 at *1, "any dispute regarding a material issue of fact must be genuine—the evidence must be such that 'a reasonable jury could return a verdict for the nonmoving party[]'" (citation omitted).  Plaintiff respectfully submits to this Court that the record it proffers in support

---

[13] The warrantor must be provided 'a reasonable opportunity to cure such failure to comply [with the terms of a warranty]." *Rice v. Newmar Corp.*, 2009 WL 10673088, *4 (D. Ariz. Dec. 23, 2009), citing (among others) *DeShazer v. Nat'l RV Holdings, Inc.*, 391 F. Supp. 2d 791, 798 (D. Ariz. 2005). Here, the record unequivocally establishes that Plaintiff gave Defendants opportunity to cure, including the Rolls-Royce Vehicle spending almost a month at Towbin right before the end of the warranty (the Last Warranty Attempt, *see* Ex. 21).  During that time the engine was reassembled. *See* Ex. 27 to Edalat Declaration at WH 000163. Thereafter, the "engine block has cracked and is broken where the starter motor bolts to the engine bolt."  *See* Ex. 30 to Edalat Declaration at WH 000151.

[14] *See* exhibits to the Declarations of Ian G. Schuler, ECF Nos. 59 and 65.

of this Opposition demonstrates there are disputes regarding material facts at issue which are best reserved for the trier of fact at trial in this matter.

### IV.    <u>CONCLUSION</u>

Based upon the foregoing, Plaintiff respectfully requests this Court deny the Motions, as genuine issues of material fact remain which preclude Defendants from demonstrating an entitlement to relief under FED. R. CIV. P. 56.

**HOLLEY DRIGGS WALCH
FINE WRAY PUZEY & THOMPSON**


  /s/ Mary Langsner
OGONNA M. BROWN, ESQ.
Nevada Bar No. 7589
MARY LANGSNER, ESQ.
Nevada Bar No. 13707
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
*Attorneys for Wynn Holdings, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 13th day of April 2018, I electronically transmitted the above and foregoing using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to all counsel in this matter; all counsel being registered to receive Electronic Filing.

DATED this 13th day of April 2018.

An employee of Holley Driggs Walch
Fine Wray Puzey & Thompson

12664-01/2026860_8.docx

12664-01/2026860_8.docx